**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| MARIA CONSUELO DIAZ, | ) | NO. CV 11-2808 SS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM DECISION AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff Maria Consuelo Diaz ("Plaintiff") brings this action seeking to reverse the decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying her application for Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Agency is REVERSED and REMANDED for further proceedings.

**PROCEDURAL HISTORY**

On October 16, 2006, Plaintiff filed an application for Supplemental Security Income ("SSI") claiming that she became disabled on March 11, 2006. (Administrative Record ("AR") 102). The Agency denied her initial application on February 7, 2007 and on reconsideration on September 13, 2007. (AR 20, 44-53). Plaintiff then requested a hearing, which was held before Administrative Law Judge Mary L. Everstine (the "ALJ") on November 3, 2008. (AR 27). Plaintiff appeared with a non attorney-representative and testified with the assistance of an interpreter. (AR 20). A vocational expert also appeared at the hearing. (Id.). On November 26, 2008, the ALJ issued a decision denying benefits. (AR 14, 20-25). Plaintiff sought review before the Appeals Council (AR 12-13), which denied the request on February 18, 2011. (AR 1-4). On April 1, 2011, Plaintiff filed the instant action.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.910.

incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
(3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.
(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.
(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).
\\

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education and work experience. Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since October 4, 2006. (AR 22). At step two, the ALJ found that Plaintiff had the severe impairments of status post left mastectomy and obesity. (Id.). The ALJ explained that Plaintiff's conditions of post left mastectomy and obesity "each impose[d] more than a minimal restriction of her ability to perform basic work activities

---

[2] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a).

4

and, thus, are severe impairments." (Id.). The ALJ determined that, "although the claimant has moderate stenosis at L4-5, there is no evidence of record that it more than minimally limits her functioning." (AR 23).

At step three, the ALJ found that Plaintiff did not "have an impairment or combination of impairments that met or medically equaled one of the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AR 23). The ALJ explained that in making this decision she "considered the opinions of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." (Id.). At step four, the ALJ determined that Plaintiff "has the prophylactic residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasionally perform overhead reaching with upper left extremity." (Id.).

At step five, the ALJ found that the Plaintiff "is capable of performing past relevant work as an assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (AR 25). The ALJ credited the assessment of the vocational expert in determining that the Plaintiff's "past work as an assembler qualifies as past relevant work . . ." (Id.). The ALJ compared the Plaintiff's RFC with the demands of that work and found that the Plaintiff "is able to perform it as actually performed." (Id.). Accordingly, the ALJ found that Plaintiff was not disabled. (Id.).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**DISCUSSION**

Plaintiff contends that the ALJ erred for several reasons: (1) "the ALJ improperly evaluated Plaintiff's spine impairment at step two of the sequential evaluation process," (Memorandum in Support of Plaintiff's Complaint ("Plaintiff's Memo") at 1); (2) "the ALJ improperly rejected the opinions of Plaintiff's treating physicians," (id. at 2); (3) "the

ALJ improperly assessed Plaintiff's obesity and its impact on her functioning," (id.); (4) "the ALJ improperly evaluated Plaintiff's Residual Functional Capacity and her ability to perform past relevant work at step four," (id.); and (5) "the ALJ improperly discredited the testimony of Plaintiff." (id.).

The Court agrees with Plaintiff's first and second grounds for remand. For the reasons discussed below, the Court finds that the ALJ's decision should be reversed and this action remanded for further proceedings.

**A.   The ALJ Erred In Her Evaluation Of Plaintiff's Back Impairment**

Plaintiff's first claim is that the ALJ erred by failing to find her spine or back impairment to be a severe impairment. (Plaintiff's Memo at 2). Specifically, Plaintiff argues that "there is clear evidence that Plaintiff's back pain and related limitations cause much greater than a 'minimal effect' on her ability to perform work-like tasks." (Id. at 3). For the reasons discussed below, the Court finds that the ALJ failed to properly assess Plaintiff's back impairment.

The Court notes that at step two, the ALJ made the following statement:

> 2. The claimant has the following severe impairments: status post left mastectomy; and obesity (20 C.F.R. 416.921 et seq.).

7

(AR 22). The ALJ then proceeded to mention some of Plaintiff's back issues but did not specifically recognize them as a severe impairment. (AR 22-3). Furthermore, the ALJ concluded this portion of her analysis by commenting that Plaintiff's moderate stenosis at L4-5 no more than "minimally limits her functioning." (AR 23). These findings are not supported by substantial evidence in the record.

By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153-54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1290) (stating that the step two inquiry is a de minimis screening device to dispose of groundless claims). An impairment is not severe only if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individual['s] ability to work." Smolen, 80 F.3d at 1290 (internal quotations marks omitted). To the extent the ALJ failed to recognize Plaintiff's back impairments as a separate, severe impairment, deserving of analysis as a severe impairment, the ALJ erred. Substantial evidence existed in the record to demonstrate a severe back impairment.

Here, Plaintiff's medical records from her treating physician, Abraham Orozco, M.D., and her treating oncologist, Angela Rabkin, M.D., demonstrate that Plaintiff has lumbar pain, lumbar spinal stenosis, and left leg radiculopathy. (AR 162, 187). On October 24, 2008, Dr. Orozco filled out a functional capacity evaluation titled "Medical Source Statement (Physical)," in which he diagnosed Plaintiff with lumbar spinal stenosis, disc disease and left leg radiculopthy. (AR 269). He

also found that Plaintiff has moderate push/pull limitations in her upper extremities and severe push/pull limitations in her lower extremities. (Id.). On October 19, 2008, Dr. Rabkin also filled out a functional capacity evaluation titled "Medical Source Statement (Physical)," in which she diagnosed Plaintiff with a history of left breast cancer and left lumbar radiculopathy. (AR 271). She also found that Plaintiff has moderate push/pull limitations in both the upper and lower extremities. (Id.).

After documenting Plaintiff's symptoms and complaints due to her back impairment, (AR 185, 186), Dr. Orozco ordered a CT Scan of the lumbosacral spine. (AR 186). The CT Scan results showed: "1. L5-S1 focal disc bulge (HNP), and 2. Moderate central stenosis at L4-5 due to combination of diffusely bulging disc and facet hypertrophy." (AR 247-49). On April 3, 2008, Plaintiff saw Dr. Tognazzini at West Ventura Medical Clinic Urgent Care Center, after she stepped off a bus and fell. (AR 267). Dr. Tognazzini noted lumbar pain, left calf, foot and toe pain. (Id.). Plaintiff scheduled a medical appointment for May 28 for an evaluation of a herniated disc and there was decreased range of motion and pain. (AR 267-68). Dr. Tognazzini prescribed "Toradol" for Plaintiff. (AR 268).

On June 12, 2008 Plaintiff had an MRI of her lumbar spine which showed: "1. Degenerative disc disease at multiple levels. 2. Broad-based disc bulge at L4-5 with mild left neural foraminal narrowing. 3. Central disc protrusion at L5-S1." (AR 245-46). Additionally, Plaintiff has had two post-hearing lumbar epidural steroid injections to relieve the pain in her back. (AR 277-78). Finally, Plaintiff

testified that her mobility and daily life activities are greatly restricted due to her back impairments. (AR 31-35).

These objective medical findings indicate that Plaintiff suffered from a severe back impairment. 20 C.F.R. § 416.927(a)(2) ("Medical opinions . . . that reflect judgments about the nature and severity of [a plaintiff's] impairment(s), including symptoms, diagnosis and prognosis," are evidence that a plaintiff may submit in support of his disability claim). Thus, it appears that the ALJ applied more than a <u>de</u> <u>minimis</u> test at step two or overlooked the fact that Plaintiff suffered from a severe back impairment. The error was not harmless because the ALJ's residual functional capacity determination did not adequately consider the limitations imposed by Plaintiff's severe back impairment. Remand is required.

**B.** **The ALJ Failed To Provide Specific And Legitimate Reasons To Reject The Treating Physicians's Opinions**

Plaintiff's second claim is that the ALJ failed to properly consider the opinions of treating physicians, Drs. Orozco and Rabkin. (Plaintiff's Memo at 6). Specifically, Plaintiff argues that "the reasons cited by the ALJ for rejecting their opinions are not specific and legitimate; rather, they are general and inaccurate reasons based on mis-interpretations of the evidence as a whole." (<u>Id.</u> at 7). The Court agrees.

Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.

10

Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. Id.; Holohan v. Massarani, 246 F.3d 1195, 1202-03 (9th Cir. 2001). The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Dr. Orozco treated Plaintiff from September 5, 2006 to March 3, 2008, during which time he saw Plaintiff on at least twelve occasions.[3] (AR 157, 185-86, 188, 190, 192-93, 195-97, 200, 203). As previously stated, Dr. Orozco diagnosed Plaintiff with lumbar spinal stenosis, disc disease and left leg radiculopthy. (AR 269). He also found that Plaintiff has moderate push/pull limitations in her upper extremities and severe push/pull limitations in her lower extremities. (Id.). Plaintiff's CT Scan (2/14/08) and a lumbar spine MRI (6/12/08) confirmed the diagnosis and evidenced that Plaintiff's spine impairments were worsening over time. (AR 245-49). To ease Plaintiff's lumbar pain, Dr. Orozco referred Plaintiff to Dr. Nelly Mac, a surgeon, who gave Plaintiff epidural injections. (AR 277-78).

Dr. Rabkin treated Plaintiff from September 22, 2006 to June 20, 2008, during which time she saw Plaintiff at least eleven times.[4] (AR

---

[3] Plaintiff may have seen Dr. Orozco as many as seventeen times; the record contains five Patient Encounter Forms that do not clearly display Dr. Orozco's signature. (AR 155-56, 189, 194, 198).

[4] Plaintiff may have seen Dr. Rabkin as many as thirteen times; the record contains two Clinic Notes that do not clearly display Dr.

11

162-64, 169, 171-75, 255-62). Similar to Dr. Orozco, Dr. Rabkin diagnosed Plaintiff with left lumbar radiculopathy (as well as a history of left breast cancer) and found that Plaintiff has moderate push/pull limitations in both the upper and lower extremities. (AR 271).

State agency consultative orthopedic examiner, Dr. Leoni, examined Plaintiff only once, on January 3, 2007. (AR 149-53). Dr. Leoni concluded that Plaintiff "has no limitations to lifting, sitting, standing or walking at this time." (AR 153). Additionally, Dr. Leoni also concluded that Plaintiff is able to "perform basic activities and move and handle objects." (Id.). During the visit, Dr. Leoni did not perform any diagnostic tests. (AR 149-53). Because the opinion of Dr. Leoni contradicted the opinions of Drs. Orozco and Rabkin, the ALJ was required to provide "specific and legitimate reasons" to properly reject the opinions of Drs. Orozco and Rabkin.

The ALJ credited Dr. Leoni's opinion and rejected Drs. Orozco and Rabkin's opinions for the following reasons. First, the ALJ credited the opinion of Dr. Leoni "based on supportability with medical signs and laboratory findings; consistency with the record; and, area of specialization." (AR 24). Second, the ALJ concluded that Drs. Orozco and Rabkin "responded with limited and conservative treatment. Such treatment is inconsistent with the medical response that would be expected if the symptoms and limitations were as severe as described by the physicians." (Id.). Third, the ALJ found that Drs. Orozco and Rabkin's opinions "appear to be based primarily on the subjective statements of the claimant." (Id.). The above reasons stated by the

---

Rabkin's signature. (AR 166, 254).

12

ALJ's do not qualify as "specific and legitimate" reasons because they are not supported by the record.

The first reason, i.e., that Dr. Leoni's findings were supported by medical evidence and laboratory findings, were consistent with the record, and his area of specialization, is refuted by Drs. Orozco and Rabkin's treating records and areas of specialization. Dr. Leoni examined Plaintiff only once. (AR 149-53). This examination occurred over a year prior to Plaintiff's CT Scan and lumbar spine MRI, (AR 149-53, 245-49), the results of which supported the findings of Drs. Orozco and Rabkin. (AR 245-49). Therefore, the results of the diagnostic tests refute the ALJ's conclusion that Dr. Leoni's opinion was supported by laboratory findings and is more consistent with the record. 20 C.F.R. § 404.1527(d)(3) (weight accorded to physician's opinion dependent on supportability with medical signs and laboratory findings).

The second reason, i.e., that Drs. Orozco and Rabkin responded with limited and conservative treatment, is not supported by the record. Drs. Orozco and Rabkin had a long and extensive treating relationship with Plaintiff, where they extensively documented Plaintiff's lumbar pain. (AR 157, 162-64, 168-69, 171-75, 185-88, 190, 192-93, 195- 97, 200, 203, 255-62). Dr. Orozco diagnosed Plaintiff with lumbar spinal stenosis, disc disease and left leg radiculopathy, (AR 269), and Dr. Rabkin diagnosed Plaintiff with left lumbar radiculopathy. (AR 271). Additionally, Dr. Orozco ordered diagnostic tests, (AR 186), and requested that Plaintiff receive epidural injections to ease her lumbar pain. (AR 277-78). While the doctors did not recommend surgery, Plaintiff underwent significant testing and treatment, including injections. "Limited and conservative treatment" is not a fair

13

characterization of this record.[5] Moreover, while Dr. Leoni did specialize in pain management and ambulatory care, these specializations alone are not enough to overcome the opinions of Dr. Orozco, a family practitioner who undoubtedly treats many patients with orthopaedic conditions and Dr. Rabkin, an oncologist, who would commonly treat patients with cancer-related bone and pain issues.

The third reason, that the opinions of Drs. Orozco and Rabkin were primarily based on the subjective statements of Plaintiff, is refuted by the objective medical evidence. As discussed above, the opinions of Drs. Orozco and Rabkin are amply supported by objective medical evidence such a CT Scan and lumbar spine MRI. (AR 245-49). Thus, the treating doctors did not base their opinions primarily on Plaintiff's subjective complaints.

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Because the ALJ failed to provide specific and legitimate reasons for rejecting the treating physician's opinions, the case must be remanded to remedy this defect.

\\
\\
\\
\\
\\

---

[5] Medical records indicate that though Dr. Orozco ordered physical therapy for Plaintiff, her Medi-Cal coverage impeded the receipt of this treatment. (AR 257).

14

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 1, 2012

\_\_\_\_/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE